IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DOUBLE G ENERGY, INC., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| | § | 3:05-CV-0749-P |
| v. | § | |
| | § | |
| AT GAS GATHERING, INC., | § | |
| TGC, INC., ENERGAS RESOURCES, | § | |
| INC., GEORGE SHAW, | § | |
| SCOTT SHAW, and DAVID YOUNG, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendants' Motion to Dismiss, or in the Alternative, to Compel

Arbitration, filed April 25, 2005.[1]   After considering the parties' arguments, briefing, and the

applicable law, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion.

### I.      Background

Plaintiff Double G Energy, Inc. ("Plaintiff"), a Texas corporation, filed its Original Petition

on March 16, 2005 in the 116th District Court, Dallas County, Texas.  In its Original Petition,

Plaintiff asserts claims against AT Gas Gathering, Inc. ("AT Gas"), an Oklahoma corporation, TGC,

Inc. ("TGC"), a Kentucky corporation, Energas Resources, Inc. ("Energas"), a Delaware

corporation, and George Shaw, Scott Shaw and David Young, all residents of Oklahoma

(collectively "Defendants").  (Pl.'s Orig. Pet. at 1-2.)  Specifically, Plaintiff alleges fraudulent

---

[1] Plaintiff Double G Energy, Inc. filed a Response on May 17, 2005, and Defendants filed a Reply on June 13, 2005.

inducement, breach of contract, common law fraud, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act ("DTPA"), negligence and gross negligence, breach of fiduciary duty, and statutory fraud against Defendants. (Pl.'s Orig. Pet. at 5-10.) Additionally, Plaintiff requests an accounting and attorney's fees from Defendants. *Id.* Defendants removed the case to this Court on April 18, 2005.

On or about February 25, 2004, Plaintiff and Energas entered into a Letter of Intent for Plaintiff's purchase of an eighty percent (80%) working interest in an oil and gas drilling program (the "Project") located in Pulaski County, Kentucky. *Id.* at 3. Plaintiff claims the execution of the Letter of Intent resulted from various verbal and written representations of Defendants. *Id.* In accordance with the terms of the non-binding Letter of Intent, two agreements were subsequently executed. First, on or about May 28, 2004, Plaintiff, AT Gas and TGC entered into a Formal Agreement for Partial Acquisition of Oil and Gas Properties and for the Joint Development of Oil and Gas Properties (the "Joint Development Agreement"). *Id.* This agreement specified that it was to be governed by Oklahoma law. (Defs.' App. 17, ¶ 18.) Second, the parties entered into an Operating Agreement with TGC as the Operator, and AT Gas and Plaintiff as the non-operators of the Project. *Id.*

Shortly after entering into the two agreements with AT Gas and TGC, Plaintiff was informed that there had been material underestimations regarding the various costs, the requisite "Contract Depth," and the well design for each well in the Project. *Id.* at 4. On July 14, 2004, as a result of the material estimation errors and changes, Plaintiff executed "Amendment No. 1" to the Joint Development Agreement, causing Plaintiff a significant increase in costs over the initial costs represented by Defendants. *Id.*

Defendants now move the Court to dismiss Plaintiff's complaint for lack of personal jurisdiction, or alternatively, to compel arbitration. (Defs.' Mot. at 1.) Defendants also move the Court to dismiss for failure to state a claim as to Energas, George Shaw, Scott Shaw, and/or David Young. *Id.* at 2.

## II.    Personal Jurisdiction

Defendants first argue that this Court lacks personal jurisdiction. Plaintiff contends, however, that Defendants have sufficient minimum contacts to support the jurisdiction of this Court.

The plaintiff bears the burden of establishing a district court's personal jurisdiction over a nonresident defendant who moves for dismissal. *Wilson v. Belin*, 20 F.3d 644, 648 (5th. Cir. 1994). However, when a court rules on such motion without holding an evidentiary hearing, the plaintiff only has to establish a *prima facie* case for personal jurisdiction, as the court must accept as true all uncontroverted allegations in the complaint and resolve all factual conflicts presented by the parties' in the plaintiff's favor. *Wilson*, 20 F.3d at 648. As there has been no evidentiary hearing in this case, Plaintiff only has to show a *prima facie* case. The Court concludes that, on the totality of the facts presented herein, Plaintiff has established a *prima facie* case that personal jurisdiction exists. In so holding, this Court expresses no opinion regarding the merits of Plaintiff's claims whatsoever.

Federal courts in Texas have personal jurisdiction over a defendant to the same extent as the Texas state courts. *Aviles v. Kunkle*, 978 F.2d 201, 203-4 (5th Cir. 1992). Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the full extent allowed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution, the Court need only determine whether exercising jurisdiction over Defendants is consistent with due process. *Id.*

Generally, due process would only be satisfied in this context if Defendants have

purposefully established "minimum contacts" in the forum state and the exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-475, 476 (1985).  Minimum contacts may take the form of either general or specific jurisdiction. *Freudensprung v. Offshore Technical Servs. Inc.*, 379 F.3d 327, 343 (5th Cir. 2003).  To establish general jurisdiction, it must be shown the defendant's contacts with the forum were "continuous and systematic," *Perkins v. Benguet Mining Co.*, 342 U.S. 437, 445-46 (1952), whereas specific jurisdiction exists when a Defendant  "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The "purposeful availment" necessary for specific jurisdiction protects a defendant from being brought into a jurisdiction solely based on "random," "fortuitous," or "attenuated" contacts. *Id.* at 475.  A single act may form a sufficient basis for personal jurisdiction if the claim arises from that single act and the defendant can reasonably foresee being brought into court in the forum state. *Icee Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 591 (5th Cir. 2003).  However, simply contracting with a resident of the forum state does not sufficiently support the exercise of jurisdiction over the defendant.  *Id.*  Rather, to determine whether a defendant has purposefully established minimum contacts with the forum, the important considerations are prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing. *Id.* at 591-92.


A.      Defendants AT Gas Gathering, Inc. and TGC, Inc.

Plaintiff's Original Petition alleges that Defendants AT Gas and TGC: 1) engaged in telephone calls and written communications with Plaintiff related to the negotiation of the agreements; 2) contracted with Plaintiff, a Texas corporation, and 3) communicated with Plaintiff either as required by the agreements or in furtherance of the agreements.  (Pl.'s Orig. Pet. at 3-5.)

Defendants argue that these are not sufficient minimum contacts with Texas to establish personal jurisdiction.  In support of their argument, Defendants cite *Holt Oil & Gas Corp. v. Harvey*, the facts of which are similar to those in the case at bar.  801 F.2d 773 (5th Cir. 1986).  In *Holt*, the defendant: 1) entered into a contract with the plaintiff, a Texas corporation; 2) sent a final revised joint operating agreement from Oklahoma to Texas; 3) sent three checks from Oklahoma to Texas in partial performance of its contractual obligations; and 4) engaged in extensive telephonic and written communication with plaintiff.  *Id.* at 778.  The *Holt* court found that these contacts were "insufficient to support an exercise of specific jurisdiction."  *Id.*  The *Holt* court stated:

> Although the contractual relationship between Holt and Harvey may have been cemented in Texas, the significance of this fact is diminished by the contract provision specifying Oklahoma law would govern the agreement.  Our conclusion is further bolstered by the fact that performance of the contract was centered in Oklahoma rather than Texas.  Given that the material performance occurred in Oklahoma, the fact that Harvey made payments to Texas does not weigh heavily in our determination.  Finally, the exchange of communications between Texas and Oklahoma in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law.  These communications to Texas rested on nothing but "the mere fortuity that [Holt] happens to be a resident of the forum."  *Id.*

Like in *Holt*, the agreements in the instant case specified that Oklahoma law would govern.  Furthermore, the agreements in the case at bar "were centered" on developing oilfield infrastructure in the state of Kentucky, and the Defendants' only interaction with Texas was the exchange of

communications, the execution of the agreements, and the delivery of documents prescribed by the agreements. As such, if *Holt* were applicable, this "exchange of communications...in the course of developing and carrying out the contract" would not be sufficient to subject AT Gas or TGC to the jurisdiction of this Court. *See id.*

However, the Court finds *Holt* distinguishable from the present circumstances. In *Holt*, the entire controversy centered on a contract dispute while the instant case also contains allegations of intentionally tortious activity, such as fraud and misrepresentation. It is well established that the commission of an intentional tort aimed at the forum state will satisfy the minimum contacts requirement. *Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 334 (5th Cir. 1982). *But see Southern Bleacher Co., Inc. v. Husco, Inc.*, No. 7:01-CV-009-R, 2001 U.S. Dist. WL 497772, at *5 (N.D. Tex. May 7, 2001) (holding, against the weight of much Fifth Circuit case law, that an alleged misrepresentation aimed at the forum state is not sufficient to demonstrate purposeful availment).

In *Wien Air Alaska, Inc. v. Brandt*, the Fifth Circuit stated that "[when] the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."[2] *Wien*, 195 F.3d at 213. Additionally, the United States Supreme Court in *Calder v. Jones* held that if intentional conduct is intended to cause injury in a specific state, that is sufficient to give specific jurisdiction to the courts of that state. 465 U.S. 783 (1984).

---

[2] In *Wien*, the defendant's misrepresentations via phone calls and personal visits constituted purposeful availment with Texas. *Wien*, 195 F.3d at 214. The Court stated that "the precise number of *physical* visits to [the forum] . . . may be irrelevant . . . [because] a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id.* at 213 (quoting *Diamond Mortgage Corp. v. Sugar*, 913 F.2d 1233, 1247 (7th Cir. 1990)).

In the case at bar, Plaintiff alleges the communications by Defendants with Plaintiff in Texas constituted misrepresentation and various types of fraud causing harm to Plaintiff. Under *Wien*, these allegations are sufficient to establish purposeful availment with Texas.[3] If the tortious allegations are proven, Defendants would be hard-pressed to convince a tribunal that the acts of fraud and misrepresentation were not intended to cause injury to the Plaintiff in Texas. Consequently, the Court finds that Plaintiff has presented a *prima facie* case for specific jurisdiction.

### B.    Defendant Energas

Plaintiff asserts that Energas purposely availed itself of Texas by communicating with the Plaintiff in Texas via telephone, e-mail, letters, documents and faxes. (Pl.'s Resp. at 5-6.) Furthermore, Plaintiff alleges that Energas provided additional documentation to Plaintiff in Texas pursuant to the Letter of Intent. *Id.* Defendants argue that Energas has no contacts with Texas and should therefore not be subject to the jurisdiction of this Court. (Defs.' Mot. at 9.) Defendants state further that Energas was a party only to the Letter of Intent, which is not the basis for the Plaintiff's causes of action. (Defs.' Reply at 5.)

Arguably, if the causes of action presented by Plaintiff were solely contract-based, Energas would likely not have sufficient contacts to exercise this Court's jurisdiction over them. However, Plaintiff clearly asserts that Energas engaged in intentionally tortious activity, as Plaintiff states that

---

[3] The Court notes that in *Panda Brandywine Corp. v. Potomac Electric Power Company*, 253 F.3d 865, 870 (5th Cir. 2001), the Fifth Circuit "refuse[d] . . . to allow Appellants to sue Appellee in the district court based on Appellants' self-serving allegations when the 'potential' injury claimed by Appellants resulted from interference with agreements that have nothing to do with Texas except for the mere fortuity that Appellants reside there." However, in the *Panda Brandywine* decision, the sole "evidence" supporting the allegations of intentionally tortious acts was the Appellants' state court petition. Unlike the plaintiff in *Panda Brandywine*, Plaintiff in the instant case does not rely merely on conclusory allegations. Here, Plaintiff has also submitted a sworn declaration by its president, Max Golden, which supports the allegations of intentionally tortious activity.

Energas fraudulently induced Plaintiff to enter into the subsequent agreements with AT Gas and TGC. (Pl.'s Orig. Pet. at 5-6.) Thus, the analysis is the same as that concerning AT Gas and TGC, and the fact that Energas was only a party to the Letter of Intent rather than the subsequent agreements which give rise to the contract actions is irrelevant to the jurisdictional analysis in this case. Plaintiff's allegation of intentionally tortious acts by Energas is sufficient to establish a *prima facie* showing of specific jurisdiction on the Court with respect to Energas.

### C.      Defendants George Shaw, Scott Shaw and David Young

Plaintiff asserts that the Court also has specific jurisdiction with respect to George Shaw, Scott Shaw and David Young (collectively "The Individual Defendants"). Defendants argue that the Individual Defendants do not have sufficient minimum contacts with Texas because their limited communications with the Plaintiff were in their capacity as officers, directors, employees and/or agents of AT Gas and TGC, and as such, the fiduciary shield doctrine should apply. (Defs.' Mot. at 9-10.)

"The fiduciary shield doctrine holds that an individual's transaction of business within a State solely as a corporate officer does not create personal jurisdiction . . . ." *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985); *Saktides v. Cooper*, 742 F. Supp. 382, 385 (W.D. Tex. 1990). The fiduciary shield doctrine can be overcome by a showing that the party invoking the doctrine engaged in "tortious activity even if such acts were performed within the scope of their employment as corporate officers." *Fowler v. Broussard*, No. Civ.A.3:00-CV-1878-D, 2001 U.S. Dist. WL 184237, at *4 (N.D. Tex. Jan. 22, 2001). An allegation of an intentional tort may be a sufficient showing when a defendant does not explicitly deny the allegation in an affidavit. *Optimum Return LLC v. Cyberkatz Consulting, Inc.*, No. Civ.A.3:03-CV-1064D, 2004 U.S. Dist. WL 827835, at *3

n.2 (N.D. Tex Mar. 26, 2004).

In the instant case, Plaintiff alleges that the Individual Defendants made fraudulent statements and misrepresentations to Plaintiff through telephone calls, e-mails, and personal visits to induce Plaintiff to enter into the Letter of Intent with Defendant Energas and the Joint Development Agreement with Defendants AT Gas and TGC. (Pl.'s Resp. at 7.) Plaintiff further alleges that Individual Defendants, while in Texas at Plaintiff's offices, engaged in fraudulent inducement, breach of contract, fraud, negligent misrepresentation, gross negligence, and violations of the DTPA. *Id.*

Defendants argue that these allegations are "bald assertions" that cannot support personal jurisdiction. (Defs.' Reply at 5-6.) However, in the Original Petition, Plaintiff includes details which specifically discuss the manner in which the Defendants allegedly committed intentional torts. (*See* Pl.'s Orig. Pet. at 4-5.) As such, Plaintiff presents a *prima facie* case of tortious activity, the fiduciary shield fails, and the Individual Defendants are subject to the specific jurisdiction of this Court.

Because the requisite level of contacts have been shown to support a *prima facie* case of specific jurisdiction as to all the Defendants, this Court does not address Plaintiff's theories of general jurisdiction or its corresponding request for further discovery concerning such jurisdiction. As the plaintiff has established minimum contacts, the Court proceeds to determine whether the defendant is able to show that the assertion of jurisdiction would be unfair. *See Wien*, 195 F.3d at 215.

### D.     Notions of Fair Play and Substantial Justice

To satisfy due process requirements, the exercise of jurisdiction over a nonresident defendant

must also comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  To determine whether the exercise of jurisdiction satisfies this requirement, courts must consider several factors: 1) the burden on the defendant; 2) the forum state's interest in the dispute; 3) the plaintiff's interest in obtaining relief; 4) the judicial system's interest in having the suit resolved efficiently and 5) the interest of the several states in furthering social policies.  *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113 (1987).  Also, the defendant must present a "compelling case" to show that the exercise of jurisdiction is unreasonable if minimum contacts have already been established.  *Burger King*, 471 U.S. at 477.

In arguing that the exercise of jurisdiction would be unreasonable, Defendants argue that they will be severely burdened if forced to litigate in Texas.  (Defs.' Mot. at 14.)  Defendants also assert that Texas has no interest in resolving an issue of Oklahoma law.  *Id.*  Defendants emphasize that any injury to Plaintiff resulted primarily from activity conducted in Oklahoma or Kentucky.  *Id.*  Defendants also suggest that the only judicial efficiency to be gained by litigating in Texas is for the Plaintiff.  *Id.*

Plaintiff counters by stating that the burden on Defendants will be minimal, as Defendants have local counsel in Dallas and the distance from Oklahoma City to Dallas is rather minimal.  (Pl.'s Resp. at 8.)  Furthermore, Plaintiff states that its claims reflect wrongs Defendants perpetrated against it, at least in part, within the State of Texas.  *Id.*

In *Wien*, the Fifth Circuit found jurisdiction to comport with the notions of fair play and substantial justice notwithstanding the fact that the defendant was a German citizen.  *Wien*, 195 F.3d at 215.  The *Wien* court stressed that Texas had an interest in the matter because the defendant allegedly perpetrated a fraud against a Texas corporation.  *Id.*  Additionally, admitting that litigation

in Texas would place a burden on the defendant, the *Wien* court stated that once minimum contacts are established, even large burdens on the defendant will be tolerated.  *Id.*

In the instant case, the burden on Defendants is much less than that on the German citizen in *Wien*, given the short travel time from Oklahoma City and the Defendants' retention of local counsel in Texas.  Also, Texas has a legitimate interest in protecting local corporations from tortious acts perpetrated by nonresidents.  Plaintiff in the instant case also has a significant interest in resolving the dispute in Texas, as many of the alleged tortious acts injured Plaintiff in Texas.  In the end, Defendants have simply not presented a "compelling case" that warrants disregarding the established minimum contacts in favor of dismissal.  Therefore, this Court's exercise of jurisdiction comports with the traditional notions of fair play and substantial justice.  Having found that jurisdiction is proper, the Court proceeds to determine whether arbitration should be compelled.

## III.    Arbitration

### A.    The Federal Arbitration Act

The first task of a court asked to compel arbitration is to determine whether the parties agreed to arbitrate the dispute.  *See Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000).  A court is to make this determination by applying the federal substantive law of arbitrability, "applicable to any arbitration agreement within the coverage of the [FAA]."  *Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1, 24 (1983); *see also* 9 U.S.C. §§ 1-16 (1999).  In addition to the federal substantive law, a court must also employ the rules of contract construction to determine the intent of the parties.  *See Harvey*, 199 F.3d at 793.  However, "[the FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an

allegation of waiver, delay, or a like defense to arbitrability." *Id.* (citing *Moses H. Cone*, 460 U.S. at 25); *see Fleetwood Enterps., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002).

### B.      Agreement to Arbitrate

In determining whether the parties agreed to arbitrate, the Court must consider:  1) whether there is a valid agreement to arbitrate between the parties; and 2) whether the dispute in question falls within the scope of that arbitration agreement.  *See Fleetwood*, 280 F.3d at 1073.

### 1.      Valid Agreement

Plaintiff does not dispute the validity of the arbitration provision between AT Gas, TGC, and Double G, but Plaintiff contends that the Court should not compel arbitration of the claims against Energas and the Individual Defendants because these parties did not sign the Joint Development Agreement, which contains the arbitration clause.  Defendants argue that George Shaw and Scott Shaw, by virtue of their officer positions at AT Gas and TGC, should be encompassed by the arbitration clause because of the language in the arbitration provision  which provides that a dispute between "AT Gas, TGC and/or [Plaintiff], or any of their legal representatives, attorneys, accountants, *agents or employees* . . . shall be resolved through arbitration rather than litigation." (Defs.' App. 17.)  Additionally, Defendants argue the claims against Energas and the Individual Defendants should be subject to arbitration because of the doctrine of equitable estoppel.

In determining whether a valid arbitration agreement exists between the parties, "ordinary contract principles determine who is bound." *Fleetwood*, 280 F.3d at 1073.  Although a party that has not expressly agreed to arbitration will generally not be compelled to arbitrate claims, a non-signatory may compel arbitration under an equitable estoppel theory.  *See Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000) (adopting the "intertwined-claims test"

formulated in *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).  In *Grigson*,

the Fifth Circuit adopted the view that equitable estoppel allows a non-signatory to compel

arbitration under two circumstances:

> First, equitable estoppel applies when the signatory to a written agreement containing
> an arbitration clause must rely on the terms of the written agreement in asserting its
> claims against the nonsignatory.  When each of a signatory's claims against a
> nonsignatory makes reference to or presumes the existence of the written agreement,
> the signatory's claims arise out of and relate directly to the written agreement, and
> arbitration is appropriate.  Second, application of equitable estoppel is warranted
> when the signatory to the contract containing an arbitration clause raises allegations
> of substantially interdependent and concerted misconduct by both the nonsignatory
> and one or more of the signatories to the contract.  Otherwise the arbitration
> proceedings between the two signatories would be rendered meaningless and the
> federal policy in favor of arbitration effectively thwarted.  *Id.* at 527.

The first basis for equitable estoppel requires *each* claim to completely rely on the terms of

the agreement.  *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 259 F. Supp. 2d

531, 539-40 (N.D. Tex. 2003) (stating that because only some claims depended on terms of

agreement, equitable estoppel was not warranted).  The second basis for equitable estoppel can be

satisfied where the Plaintiff generally alleges acts against the "Defendants" as a group.  *Id.* at 540

(stating that plaintiff's general allegations using term "Defendants" showed that the misconduct of

non-signatories was interdependent and concerted with the misconduct of the signatories).

In the instant case, it is clear that AT Gas, TGC, and Double G are bound by the arbitration

provision.  The arbitration provision provides:

> In the event that a dispute arises between AT Gas, TGC and/or Double G, or any of
> their legal representatives, attorneys, accountants, agents or employees, said dispute
> arising out of, in connection with or as a result of the investment hereby made,
> Double G hereby expressly agrees that said dispute shall be resolved through
> arbitration rather than litigation.  With respect to the arbitration of any dispute, the
> undersigned hereby acknowledge that:
>> (a)     Arbitration is final and binding on the parties;
>> (b)     The parties are waiving their right to seek remedies in court,

including their right to jury trial;

(c)    Pre-arbitration discovery is generally more limited and different from court proceedings;

(d)    The arbitrator's award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrator is strictly limited

Double G hereby agrees to submit the dispute to the American Arbitration Association in Oklahoma City, Oklahoma, within 10 days after receiving a written request to do so from AT Gas or TGC. If Double G fails to submit the dispute to arbitration as requested, then the requesting party may commence an arbitration proceeding. Double G further agrees that the Federal Arbitration Act shall govern the proceeding and all issues raised by this Agreement to arbitrate. Each party agrees that it shall bear all of its respective attorney's fees, costs and expenses. (Defs.' App. at 17.)

Each of these parties signed the binding agreement, and there is no reason to doubt the validity of the agreement based upon established contract principles.

Therefore, the Court proceeds to address the equitable estoppel issues surrounding Energas and the Individual Defendants. Although Defendants assert that they have satisfied the first basis for equitable estoppel (concerning reliance on the terms of the agreement), the Court does not find this argument compelling. In *Positive Software v. New Century Mortgage Corp.*, the plaintiff listed various causes of action, including copyright infringement, misappropriation of trade secrets and intellectual property, conversion, fraud, violation of the Digital Millennium Copyright Act, and civil conspiracy. 259 F. Supp. 2d at 540. The *Positive Software* court stated that "[w]hile some of these claims, such as misappropriation of trade secrets and intellectual property, may presume the existence of the Software Subscription Agreement, each claim does not rely upon the terms of the Software Subscription Agreement. Therefore, the first independent basis for equitable estoppel is not met." *Id.* The instant case is quite similar, as many of the Plaintiff's claims, such as fraudulent inducement and misrepresentation, presume the existence of the agreements rather than rely strictly on the language found within them. For this reason, the Court holds that the first basis for equitable

estoppel has not been satisfied.

The Court is persuaded by Defendants' argument that the second basis for equitable estoppel, concerning intertwined claims, should apply.[4]  In the case at bar, Plaintiff broadly uses the term "Defendants" in each cause of action.  Additionally, all of Plaintiff's allegations against the non-signatory defendants (Energas and the Individual Defendants) concern their "interdependent and concerted misconduct" with AT Gas and TGC.  Because of the relatedness of the claims in the instant case, the Court concludes that the requirements of the second basis for equitable estoppel have been met.

Furthermore, giving deference to the language of the arbitration provision, George and Scott Shaw are also bound because of the express terms of the arbitration provision.  *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003) (stating "[w]ho is actually bound by an arbitration agreement is a function of the intent of the parties, as expressed in the terms of the agreement").  The arbitration language clearly includes "agents or employees" of the signatories, and George and Scott Shaw are officers of AT Gas and TGC, and thus clearly qualify as agents of the companies.

Having found there is a valid agreement to arbitrate as to all the Defendants in the instant case, the Court now considers the scope of the arbitration agreement.

## 2.    Scope of the Agreement

---

[4] The only authority Plaintiff cites regarding equitable estoppel is *GLF Construction Corp. v. LAN/STV*, a 2003 decision from this Court.  No. 3:03-CV-0324-P, 2003 U.S. Dist., LEXIS 10026, at *6 (N.D. Tex. June 10, 2003).  Plaintiff relies on *GLF Construction* as support for the idea that a non-signatory to an arbitration provision cannot compel arbitration.  However, this Court's decision in *GLF Construction* only states the rule that, in general, non-signatories may not compel arbitration.  However, this general rule does have exceptions, one of which is the doctrine of equitable estoppel, discussed above.  *See also Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002) (recognizing that equitable estoppel can be used to overcome the general rule that arbitration cannot be required for a matter involving a non-signatory).

Plaintiff does not dispute that its claims in the instant case fall within the scope of the arbitration agreement.  Moreover, the Court concludes that the arbitration provision is sufficiently broad as to encompass the instant dispute in its entirety.

"[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (citing *Tracer Research Corp. v. National Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994)).  Arbitration agreements which use not only the phrase "arising out of," but also "in connection with or relating to" resolve any doubt that the arbitration agreement is a "broad" clause.  *Id.*  Broad arbitration clauses are not limited to disputes arising directly from the contract, but cover all disputes between the parties "having a significant relationship to the contract regardless of the label attached to the dispute."  *Id.*  (citing *J.J. Ryan & Sons v. Rhone Poulenc Textile*, 863 F.2d 315, 321 (4th Cir. 1988); *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998)).

In the instant case, the arbitration provision uses language nearly identical to the example of "broad" language above.  As a result, since the causes of action in the instant case have a significant relationship to the agreements, they easily fall within the scope of the arbitration provision found in the Joint Operating Agreement.

Moreover, there is no evidence of external legal constraints which would prevent the claims in the instant case from being arbitrable.  Accordingly, the Court hereby orders the parties to arbitrate the claims presented herein.[5]  Additionally, the Court finds it appropriate to STAY and administratively close this case.  The parties may move the Court to reopen the case if necessary.

---

[5] As a result, the Court does not reach Defendants' argument that Energas and the Individual Defendants failed to state a claim.

**3:05-CV-0749-P**

**Page 16**

**IV.     Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, to Compel

Arbitration is GRANTED IN PART and DENIED IN PART.

**It is so ordered.**

Signed this 28th day of July 2005.


_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE